**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TINA GERMANO<br><br>                          Plaintiff,<br><br>vs.<br><br><br>STRUMBA MEDIA, LLC, d/b/a MIRACLE NOODLE, THRIVE MARKET, INC., "JOHN DOE 1-10", "BOB BOE 1-10", "ABC CORP. 1-10", and "DEF CORP. 1-10" (the last four being fictitious designations)<br><br>                        Defendants. | Civil Action No. 1:22-CV-8<br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff TINA GERMANO (hereinafter, "Plaintiff"), residing in the city of Garden City, County of Nassau, and State of New York, purchased, prepared and ingested certain pasta substitutes branded, designed, manufactured, marketed, processed, distributed and/or sold by Defendants. The pasta substitutes were unsafe, defective, dangerous, adulterated, and were culpably misrepresented as safe and/or healthy and/or did not conform to applicable implied and express warranties.

## JURISDICTION AND VENUE

2. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because:

1

a. The amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs; and

b. Complete diversity exists between the Plaintiff and the Defendants in that Plaintiff is a citizen of the State of New York, and—as is set forth in more detail in the paragraphs that follow—the Defendants are citizens of the following states/ foreign countries:

   i. Defendant STRUMBA MEDIA, LLC, d/b/a MIRACLE NOODLE (hereinafter, "Strumba") is a citizen of the State of Florida;

   ii. Defendant THRIVE MARKET, INC. (hereinafter, "Thrive") is a citizen of the State of California;

3. Personal jurisdiction over each Defendant is proper because each Defendant

a. does and has done business in New York and within this District, with the claims asserted herein arising from such business; and

b. committed the tortious acts which are the subject of this complaint in New York, and within this District.

4. Venue in this district is proper for the same reasons and because Plaintiff suffered injury as a result of Defendants' acts in this District, and Defendants have intentionally availed themselves of the laws and markets of this District.

**PARTIES**

5. At all times relevant hereto, Plaintiff was and is an individual who resides in the Eastern District of New York.

6. At all times relevant hereto and on or about July 22, 2019, Strumba is a Florida limited

2

liability company.

7. At all times relevant hereto and on or about July 22, 2019, Thrive is a California corporation.

8. "JOHN DOE 1-10", "BOB BOE 1-10", "ABC CORP. 1-10", and "DEF CORP. 1-10" are fictitious designations used to identify other individuals and/or entities who may have been involved in the manufacture, sale, distribution and marketing of Better Than Pasta, either in their own individual capacity, or as agents and/or subsidiaries of Strumba and Thrive, who have not yet been identified despite the good faith efforts of Plaintiff and her counsel to do so.

## OPERATIVE FACTS

### A. The Miracle Noodle Brand of Pasta Substitutes and the Dangers of Konjac

9. At all times relevant hereto, the Miracle Noodle brand of products are a series of pasta substitutes which are manufactured, marketed, advertised, and sold as a "healthy" alternatives to traditional pastas.

10. Unlike traditional pasta, the Miracle Noodle brand of products is made with vegetable-based ingredients. Specifically, the primary ingredient used to make Better than Pasta Noodles is a root plant known as konjac, which is also known as and/or referred to as conjac, konnyaku, yam flour or glucomannan, among other names.

11. An exemplar of the packaging for the Miracle Noodles product at issue in this litigation (specifically, Miracle Noodle Fettuccine Shirataki Noodles) is annexed hereto as **Exhibit A**. As demonstrated by this exemplar, the packaging unequivocally states that the product

3

is "a shirataki noodle made from the flour of Konnyaku Imo (konjac) plant."

12. The packaging for the product claims that the use of konjac makes it "Keto and Paleo Friendly." See **Exhibit A**.

13. The packaging also claims that Better than Pasta's use of konjac makes the product part of a line of "healthy plant based noodles, rice and ready to eat meals that offer delicious satisfying meal options without guilt or compromise. See **Exhibit A**.

14. However, despite all of Miracle Noodle's claims to the contrary, konjac is not always safe for human consumption.

15. This is because konjac is indigestible, and it swells from original size in the human digestive system.

16. These aspects of konjac are why it is often marketed as a potential weight loss supplement, with its ability to make a person feel less full while consuming less food.

17. However, these same aspects of konjac are also what make it dangerous for human consumption. The fact that it is indigestible and swells in the human digestive tract means that a person consuming products made from konjac has a significant risk of suffering from choking and/or a stomach/intestinal blockage.

18. The potential dangers of konjac are generally well known, and as a result, many countries have banned certain food products containing konjac. As a non-exclusive example, the USFDA and the European Commission have banned certain food products containing konjac since at least 2002.

19. Furthermore, Health Canada—Canada's rough equivalent of the FDA—issued an advisory back in 2010 that foods containing konjac present a significant choking and/or blockage

4

risk if not consumed with sufficient liquid.

20.    Despite the well-known and substantial risks of konjac, Better than Pasta's packaging contains no warning labels regarding its consumption, aside from a warning that it might not be suitable for people with sensitivities to high-fiber foods.  See **Exhibit A**.

B. Strumba's Role in the Manufacture, Packaging, Importing, Producing
Marketing, Distribution, Advertisement, and/or Sale of Miracle Noodles

21.    Upon information and belief, Strumba is the owner of the Miracle Noodles brand and associated intellectual property, and, either directly, or through its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") is the primary entity responsible for the manufacturing, packaging, importing, producing, marketing, distributing, advertising and/or selling Better than Pasta products.

22.    Strumba holds itself out to the public as sourcing safe, nutritious and high-quality food which is safe for human consumption.

23.    On the Miracle Noodles Website (https://miraclenoodle.com/pages/about), Strumba states:

Our mission is to give our customers peace of mind when it comes to food selection. We do so in 4 ways.

Providing healthy, delicious, guilt-free eating

Providing foods that help people heal through providing delicious foods for people with dietary restrictions like diabetes, celiac, certain seizure disorders, and general weight loss goals.

Providing foods that take the anxiety out of eating by adhering to strict guidelines on sodium, calories, non-gmo, gluten free, healthy fats, and natural.

5

Always increasing the quality, sustainable sourcing of our products, and ethical values inculcated to us by our families and giving back a portion of our profits to our Kiva microfinance partners - helping people worldwide.

24. On that same website, Strumba describes the origins of the Miracle Noodles Product Line as follows:

In 2006, **Jonathan Carp, MD** was visiting a friend in Japan when she took him to a Buddhist-run vegetarian restaurant on the outskirts of the beautiful city of Kyoto. He was introduced to konnyaku in different shapes and in noodles called shirataki. After discovering the health benefits of this amazing plant-based food and the positive health implications for his patients, he started Miracle Noodle with his family. As Miracle Noodle received positive accolades from the likes of Dr. Oz, Rachael Ray, Rocco Dispirito and being featured in magazines like Cosmo, Men Health, and First for Women and TV shows like The View, ABC News, Hollywood Tonight - the company expanded and so did the product offerings. We now offer a line of products consistent with the health goals of our customers, making healthy eating easy and delicious. All of our products are non-gmo, vegan, and grain free with an ever expanding option of organic options as well.

25. Upon information and belief, Strumba distributes Miracle Noodles products through a variety of online and physical retailers, including Thrive's well-known website.

26. Strumba, either directly, or through its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") is, at all times relevant hereto responsible for the initial manufacturing and packaging of Miracle Noodles products, including the product at issue here.

27. Strumba, either directly, or through its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") was responsible for initially creating all advertising for Mircale No products, including, but not limited to advertisements, commercials and/or product packaging.

28. Prior to the incident giving rise to this suit, Strumba, either directly, or through its

6

employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10"), entered into a contractual relationship relationship with Thrive and/or its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10"). The specifics of that relationship are discussed in the paragraphs that follow.

### C. Thrive's Role in the Marketing, Distribution, Advertising, and/or Selling of Better than Pasta

29. Thrive operates a nation-wide online grocery store, which according to their website, specializes in "natural" and "healthy" grocery options.

30. Thrive either directly, or through its employees, agents, and/or subsidiaries (possibly including Defendants "BOB BOE 1-10", and/or "DEF CORP. 1-10") marketed, distributed, advertised, sold, and/or shipped Miracle Noodle products (including the product at issue in this case) on its popular website, Thrivemarket.com.

31. Specifically, prior to the incident giving rise to this action, Thrive either directly, or through its employees, agents, and/or subsidiaries (possibly including Defendants "BOB BOE 1-10", and/or "DEF CORP. 1-10") entered into a contractual relationship with Strumba and/or its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") which allowed Strumba to market, distribute, advertise and/or ship Miracle Noodle Products through the Thrivemarket.com website.

32. The contract between Thrive and Strumba permits Strumba to market, distribute, advertise

and/or ship Miracle Noodle Products through the Thrivemarket.com website in exchange for certain financial compensation, such as fees for each product sold, or a percentage of ever sale made.

33. Under the contract between Thrive and Strumba, Miracle Noodle products are provided by Strumba and stored in Thrive's warehouses before they are shipped to customers.

34. Under the contract between Thrive and Strumba, Thrive handles all shipping for items ordered through the Thrivemarket.com website.

35. Customers on Thrive's website do not and cannot pay third-party sellers such as Strumba directly for their purchases; rather, all payments are processed by Thrive.

36. In addition to storage and shipping of inventory, Thrive also provides the use of its customer service representatives to address customer service issues arising out of items sold on the Thrivemarket.com website.

37. Strumba's product listing on the Thrivemarket.com website (which was created by Strumba, but subject to Thrive's complete editorial control) for the Miracle Noodle contains several express warranties stating that the product is fit for ordinary human consumption, including, but not limited to, the following statements:

a. Under the heading "Why You'll love it", the product listing states:

Pasta with 5 calories and 3 grams of carbs? It's a miracle! Shirataki noodles are made with fiber-packed glucomannan starch, meaning you won't feel the dreaded post-pasta bloat and fatigue you may typically feel. Just add organic tomato sauce and some fresh, low-starch veggies, and buon appetito! Miracle Noodle's Fettuccine has a flat texture that deliciously teams up with tomato, meat, or creamy sauces alike.

b. The product listing also says the subject product satisfies the following "values":

8

"certified gluten-free", "Ketogenic", "gluten-free", "Paleo", "Vegetarian", "Vegan", "low-fat", "Soy-Free", "Salt-Free", "Plant Based", "Non-GMO", "Low-Sodium", "Cholestrol-Free", "Low Sugar", "Grain Free", "Certified Kosher", "Family-Owned Business", "Non-GMO Project Verified", "Certified Vegan", and "Sugar Free."

c.  The product listing also states that "Miracle Noodle's shirataki-based products are made from fiber-rich glucomannan starch, offering a low-calorie, low-carb, gluten-free, and vegan pasta option for celiac and diabetic lifestyles."

38.  However, as alleged in ¶¶ 9-20 above, it is not always the case that products containing konjac are safe for human consumption.


### D. Negative Reviews on Thrive's Website which Placed Both Strumba and Thrive on Notice as to the Dangerous Nature of Miracle Noodles

39.  As alleged in ¶¶ 9-20 above, the potentially dangerous nature of konjac is generally well-known.

40.  However, even if the dangers of konjac were not well-known, both Strumba and Thrive, either directly or through their employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", "BOB BOE 1-10", "ABC CORP. 1-10", and "DEF CORP. 1-10") were made directly aware of the dangers of Miracle Noodles products via numerous direct customer complaints on the Thrive website.

41.  The Thrive website allows customers to leave written reviews where they describe issues they may have with particular products.

42.  When a complaint is entered on the Thrive website, both Thrive and the relevant product

seller are notified both: 1) that a review has been written, and 2) what the review says.

43. Numerous customer complaints pre-dating the incident at issue here (though the precise dates are hard to determine because the website does not list exact dates for reviews) were left by customers on Thrive website which indicated negative health problems as a result of using Better than Pasta products.   A non-exclusive sampling of these complaints includes the following 1 star (out of 5) reviews from the Thrive Website:

a. Two years ago, a user named "Liz from Texas" left the following review of the Miracle Noodles Product at issue in this litigation:

> These tasted fine (really no flavor) and the texture was very pasta-like which was great with my homemade sauce.... until the middle of the night and I woke up with a horrendous stomach ache and lots and lots and LOTS of unpleasant trips to the bathroom. I will stick with zucchini "zoodles" or some eggplant. Ouch. Not worth it in any way.

b. Approximately 5 years ago, a user named "Annette from Undisclosed" left the following review of the Miracle Noodles Product at issue in this litigation:

> I just goggled Konjac Flour and found many negative concerns about this ingredient. See for yourself... http://www.livestrong.com/article/149231-side-effects-of-konjac-root/

44. Upon information and belief, there may have been other negative complaints regarding the ill health effects of Miracle Noodles Products pre-dating the incident at issue in this litigation which were removed by Thrive, either directly or through their employees, agents, and/or subsidiaries (possibly including Defendants "BOB BOE 1-10", and/or "DEF CORP. 1-10"), at the request of Strumba, either directly or through their employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC

CORP. 1-10").

45. Despite all of these aforementioned complaints, Strumba and Thrive, as well as their respective employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", "BOB BOE 1-10", "ABC CORP. 1-10", and "DEF CORP. 1-10") (hereinafter collectively referred to as "the Defendants" or "Defendants"), continued to manufacture, package, import, produce, market, distribute, advertise and/or sell Miracle Noodles products in the exact same manner without making any changes to the underlying products to make them safer for human consumption, or at least provide proper warning labels.

46. Upon information and belief, as is common in many online retail situations, Strumba, either directly or through their employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") pays or otherwise incentivizes individuals and/or companies to leave false positive reviews on Thrive's website to counteract the negative reviews of their products, including, but not limited to, the reviews averred to in the preceding paragraphs.

47. Upon information and belief, Thrive, either directly or through their employees, agents, and/or subsidiaries (possibly including Defendants "BOB BOE 1-10", and/or "DEF CORP. 1-10") is aware of this practice of leaving false positive reviews on their website, but does nothing to curtail it.

### E. Plaintiff's Purchase and Consumption of Better than Pasta, and her Resulting Injuries

48. Relying upon the various assurances of Strumba, Thrive, and their respective employees,

11

agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", "BOB BOE 1-10", "ABC CORP. 1-10", and "DEF CORP. 1-10") (hereinafter collectively referred to as "the Defendants" or "Defendants") as set forth in the preceding paragraphs, Plaintiff purchased several bags of the Miracle Noodles Product illustrated by **Exhibit "A"** on the Thrivemarket.com website on or around October 28, 2019.

49.  On or around January 25, 2020, Plaintiff prepared a bag of the Miracle Noodles Product illustrated by **Exhibit "A"** according to the package instructions and consumed them.

50.  Over the next two days, Plaintiff developed debilitating stomach pains which got continually worse as time went on, as well as severe nausea.

51.  Finally, on or around January 27, 2020, the Plaintiff could take it no more, and went to Long Island Jewish hospital for treatment.

52.  At the hospital, diagnostic testing revealed a mass in Plaintiff's intestines, which required her to undergo emergency bowel resection and diagnostic laparoscopy surgery on January 27, 2020.

53.  These procedures revealed that the mass in Plaintiff's intestine was an undigested mass of the Miracle Noodles Product illustrated by **Exhibit "A"**.

## COUNT I
## NEGLIGENCE
### As to All Defendants

54.  Plaintiff repeats and restates the allegations of all preceding paragraphs as if fully set forth herein.

55.  Count I is directed towards all Defendants.

56. At all times relevant hereto, Defendants owed a duty to use ordinary care in the design, manufacture, marketing, promotion, processing, distribution and sale of Better than Pasta Products, such that the products would not pose unnecessary risk of harm to consumers reasonably expected to use those products.

57. Defendants had a duty to refrain from selling Miracle Noodle Fettuccine Shirataki Noodles when they became aware of hazards and potential hazards posed by such product, including but not limited to intestinal blockages caused by eating said noodles, and/or owed a duty to warn consumers and users that such product could cause injury, including but not limited to intestinal blockages.

58. Defendants had a duty to provide reasonable and adequate warnings and instructions on the packaging with its products to minimize risk.

59. Defendants owed Plaintiff and others like her a duty of care to offer food free from adulteration, and other deleterious and harmful effects.

60. Defendants breached all of the aforementioned duties, including but not limited to negligently and/or carelessly designed, manufactured, marketed, processed, distributed and/or sold Better than Pasta; negligently and/or carelessly failed to institute and/or enforce a policy for the review of safety; failed to warn purchasers and/or foreseeable users.

61. Defendants breached that duty of care by selling Miracle Noodle Fettuccine Shirataki Noodles that were adulterated, deletrious and harmful:

    a. Without conducting adequate quality control and testing,

    b. Without using proper manufacturing and production practices,

    c. Without adequately investigating reports of customer illnessess following consumption

of Miracle Noodle Fettuccine Shirataki Noodles,

d.  Without placing adequate warnings on the packaging, and

e.  By otherwise acting in a careless, negligent and/or reckless manner.

62.  As alleged at length in the preceding paragraphs, Defendants knew and/or reasonably should have known that the main ingredient in the subject product posed a risk of digestive system obstructions and/or serious injuries.

63.  As a direct, proximate and reasonably foreseeable result of Defendants' negligent acts and/or omissions, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and has lost and will lost in the future economic damages; has suffered great pain and anguish.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, and against the Defendants, for:

(a)  Compensatory damages;

(b)  Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and

(c)  Such other relief as the Court deems proper.

## COUNT II
## BREACH OF IMPLIED WARRANTY:
## UNIFORM COMMERCIAL CODE
### As to All Defendants

64.  Plaintiff repeats and restates the allegations of all preceding paragraphs as if fully set forth herein.

65. Count II is directed towards all Defendants.

66. Under the Uniform Commercial Code ("UCC"), there is an implied warranty in the sale of goods by a merchant that the goods shall be merchantable (i.e., useable for their intended purpose). The State of New York has adopted the UCC, at NY UCC § 1-101, et seq.

67. As stated by NY UCC § 2-314:

> (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

68. Under NY UCC §2-214(2), "Goods to be merchantable must be at least such as… (c) are fit for the ordinary purposes for which such goods are used; and …(f) conform to the promises or affirmations of fact made on the container or label if any."

69. As alleged at length in the preceding paragraphs, the Miracle Noodle Fettuccine Shirataki Noodles sold by Defendants was not fit for human consumption, and did not conform to the promises or affirmations of fact made on the packaging.

70. The Miracle Noodle Fettuccine Shirataki Noodles sold by Defendants were either adulterated, contaminated, dangerous and/or materially defective in design and formulation

and unfit for consumption by humans.

71. Defendants failed to properly test the Miracle Noodle Fettuccine Shirataki Noodles at issue in this litigation prior to market entry (or at any other relevant time).

72. Defendants failed to warn of the dangers of the Miracle Noodle Fettuccine Shirataki Noodles at issue in this litigation.

73. Defendants impliedly warranted that the Miracle Noodle Fettuccine Shirataki Noodles at issue in this litigation were of merchantable quality, would perform satisfactorily, and would not be unreasonably dangerous to the consumer when used in a reasonably foreseeable manner.

74. Defendants breached implied warranties because the Miracle Noodle Fettuccine Shirataki Noodles at issue in this litigation did not conform to the warranties, affirmation and/or representations made by Defendants.

75. Defendants knew and/or had reason to know that the particular purposes for which the Miracle Noodle Fettuccine Shirataki Noodles at issue in this litigation were to be used, and that purchasers and users such as Plaintiff would rely on Defendant's skill or judgment in designing, testing, manufacturing, selling and furnishing goods suitable for each purpose and use.

76. As a direct, proximate and reasonably foreseeable result of Defendants' breach of its implied warranties, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and has lost and will lost in the future economic damages; has suffered great pain and anguish.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, and against Defendants, for:

(d) Compensatory damages;

(e) Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and

(f) Such other relief as the Court deems proper.

**COUNT III**
**DECEPTIVE PRACTICES AND FALSE ADVERSTISING**
**PURSUANT TO NEW YORK GENERAL BUSINESS LAW §§ 349 & 350**
**As to all Defendants**

77.  Plaintiff repeats and restates the allegations of all preceding paragraphs as if fully set forth herein.

78.  Count III is directed at all Defendants.

79.  Pursuant to NY General Business Law (hereinafter, "GBL") § 349(a), "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

80.  Furthermore, "GBL" § 349(h) provides for a private right of action for both compensatory and injunctive relief to "any person who has been injured by reason of any violation" of the statute.

81.  Pursuant to GBL § 350, false advertising is also unlawful.

82.  As defined by GBL § 350-a(1), false advertising is "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if

such advertising is misleading in a material respect."

83. As alleged at length above, Defendants engaged in deceptive practices and false advertising in violation of, *inter alia,* GBL §§ 349 and 350.  As alleged at length above, Defendants specifically violated GBL §§ 349 and 350 by:

   a. selling Miracle Noodle Fettuccine Shirataki Noodles that were materially defective in design and formulation and/or contaminated, and/or adjulterated and/or unfit for consumption by humans,

   b. representing that Miracle Noodle Fettuccine Shirataki Noodles was healthy and wholesome when it was not (whether on the packaging, on the Internet or otherwise),

   c. selling Miracle Noodle Fettuccine Shirataki Noodles with such representations without properly testing the product to determine if it conformed to the representations,

   d. continuing sale of the Miracle Noodle Fettuccine Shirataki Noodles after Defendants knew and/or should have known that the representations being made about it was false, and

   e. either failing to warn of the dangers of Miracle Noodle Fettuccine Shirataki Noodles, or concealing such dangers, or both.

84. All of the acts described above were done in the course of trade and commerce.

85. As a proximate cause and reasonably foreseeable result of Defendants' deceptive business practices and false advertising, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and has lost and will lost in the future economic damages; has suffered great pain and anguish.

   WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, and

against Defendants, for:

(a) Compensatory damages;

(b) Punitive damages;

(c) Injunctive reflief in the form of an order enjoining Defendants from either:

(1) manufacturing (or causing the manufacture of) products for sale in New York as food for human consumption, or

(2) distributing (or causing the distribution of) products in for sale in New York as food for human consumption, or

(3) selling (or causing the sale of) products in for sale in New York as food for human consumption,

**Unless** the food being manufactured, distributed or sold:

(a) is fit for purpose and is not hamful to the health of humans, and

(b) contains no ingredients likely to cause injury to humans and is otherwise wholesome,

(c) is not sold in packaging containing false statements as to the food's wholsomeness or healthiness, and

(d) otherwise fully complies with the provisions of Section 349 and 350 of New York's GBL;

(d) Attorney's fees, litigation expenses, and costs of suit; and

(e) Such other relief as the Court deems proper.

19

**COUNT IV**
**STRICT PRODUCTS LIABILITY:**
**DEFECTIVE DESIGN OR MANUFACTURE**
**As to Defendant Strumba Only**

86. Plaintiff repeats and restates the allegations of all preceding paragraphs as if fully set forth herein.

87. Count IV is directed to Defendant Strumba, its employees, agents, and/or subsidiaries (possibly including Defendants "JOHN DOE 1-10", and/or "ABC CORP. 1-10") only.

88. As alleged at length above, Plaintiff purchased Miracle Noodle Fettuccine Shirataki Noodles which was manufactured, produced, packaged, imported, shipped, marketed, distributed, advertised and/or sold by Strumba.

89. As alleged at length above, the Miracle Noodle Fettuccine Shirataki Noodles were adulterated, defective and inherently and unreasonably dangerous and unsafe for its intended use and purpose because it contained materials (specifically, konjac) which made it unsafe for human conception.

90. There are countless examples in the market of pasta products or pasta substitute products in the market which don't use konjac, so a feasible alternative design and/or recipe plainly exists.

91. As alleged at length above, the Miracle Noodle Fettuccine Shirataki Noodles failed to perform in the manner reasonably to be expected, in light of its nature and intended function.

92. As a proximate cause and reasonably foreseeable result of Strumba's actions, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from

20

attending to her usual duties and has lost and will lost in the future economic damages; has suffered great pain and anguish.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, and against Defendants, for:

(a) Compensatory damages;

(b) Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and

(c)  Such other relief as the Court deems proper.

## COUNT V
## STRICT PRODUCTS LIABILITY: FAILURE TO WARN
### As to All Defendants

93. Plaintiff repeats and restates the allegations of all preceding paragraphs as if fully set forth herein.

94. Count V is directed towards all the Defendants.

95. As alleged at length above, Plaintiff purchased a Miracle Noodle Fettuccine Shirataki Noodles product which was manufactured, produced, packaged, imported, shipped, marketed, distributed, advertised and/or sold by the Defendants.

96. As alleged at length above, until it reached the Plaintiff, said product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the health risks.

97. Defendants had a duty to warn purchasers of the health risks posed by their product in an

effective manner.  Such warnings should have been placed on the packaging and at the point of sale, or should have otherwise been placed in a way which was reasonably calculated to give reasonable fair warning to consumers.

98. As alleged at length above, Defendants failed to provide adequate warnings as to the dangers of the products they were manufacturing, producing, packaging, importing, shipping, marketing, distributing, advertising and/or selling.

99. In fact, the subject product's packaging had no warnings aside from a warning that it might not be suitable for people with sensitivities to high-fiber foods.  See **Exhibit "A"**.

100. As a result of the Defendant's failure to warn, Plaintiff purchased and consumed a product that, as alleged at length above, caused her great harm.

101. As a proximate cause and reasonably foreseeable result of Defendants' actions, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and has lost and will lost in the future economic damages; has suffered great pain and anguish.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, and against Defendants, for:

> (a)  Compensatory damages;
>
> (b) Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and
>
> (c)  Such other relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any court or arbitration proceeding, that no such other action or arbitration proceeding is contemplated by this Plaintiff, and that there are no other parties, whom, to the knowledge of the Plaintiff's counsel, should be joined in this action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

LAW OFFICES ROSEMARIE ARNOLD
Attorneys for Plaintiff

\s\ *William Stoltz*

William Stoltz
555 Madison Avenue
New York, New York 10022
T: 201-461-1111
F: 201-461-1666
wstoltz@rosemariearnold.com

NJ Address:
1386 Palisade Avenue
Fort Lee, New Jersey 07024
**\*\*Please respond to our New Jersey Office\*\***

Date:  December 30, 2021

**EXHIBIT A**



